JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Amanda Siebert appeals from a court order adopting a magistrate's decision to modify the amount of child support she receives from defendant-appellee Julian Tavarez. Siebert complains that the court erred by (1) denying her motion for leave to file supplemental objections, (2) adopting a magistrate's decision which failed to consider the provisions of R.C. 3119.23(L), and (3) adopting a magistrate's decision which failed to consider *Page 3 
the deviation factors set forth in R.C. 3119.23. We find that the court did not err by denying Siebert's motion for leave to file supplemental objections. We do find, however, that the court erred by failing to acknowledge that R.C. 3119.04(B) controlled its determination in the first instance before using its discretion to apply statutory deviation factors under R.C. 3119.23. We therefore reverse the child support determination.
 {¶ 2} The parties have one child, born out of wedlock on December 4, 2001. Tavarez acknowledges paternity. In September 2003, the parties agreed that Tavarez would pay child support of $3,000 per month. The agreement stated that "[t]he parties agree that at such time as Defendant is no longer on a Major League Baseball roster, such will constitute a change of circumstances for purposes of modification of the within order, if appropriate." The parties appended a "child support computation worksheet" to the agreed judgment. The court journalized the agreement on October 14, 2003.
 {¶ 3} On March 18, 2004, Siebert filed a motion to modify child support. At trial, she claimed that Tavarez had signed a lucrative two-year contract which at least doubled his salary. She claimed this constituted changed circumstances which justified modification.
 {¶ 4} In findings of fact, the magistrate found that Tavarez is a professional baseball player and that Siebert has never held full-time employment. The parties began living together in 1996, shortly after Siebert *Page 4 
turned 18-years-old. During the course of this relationship, the parties comtemplated that Siebert would be a "stay-at-home" mother in the event they ever had children.
 {¶ 5} In April 2001, while pregnant with the subject child, Siebert discovered that Tavarez had fathered a child while in another relationship. Siebert broke off her relationship with Tavarez, but continued to live alone in a Broadview Heights house Tavarez purchased in 1999. She remained in the house after having the child. Tavarez paid the mortgage on the house and all of Siebert's automobile expenses. In September 2003, Tavarez asked Siebert and the child to vacate the house. Siebert continued to have full access to Tavarez's checking account. Siebert admitted that she used funds from this checking account to make a down payment on a house that she bought. At trial, she listed living and/or child care expenses which averaged to $3,218 per month.
 {¶ 6} The parties stipulated to Tavarez's income, agreeing that his two-year contract with the St. Louis Cardinals L.P. paid him "$1.5 million" for the 2004 contract year and "$2.6 million" for the 2005 contract year[1]. The magistrate found that in addition to the Broadview Heights house, Tavarez owns a house in Coral Springs, Florida, valued at approximately $600,000. This house *Page 5 
is occupied primarily by his parents. Tavarez owns two vehicles valued at approximately $90,000. He has approximately $2,000,000 in investment accounts and a pension, although no value is given for the pension.
 {¶ 7} In conclusions of law, the magistrate noted the tremendous disparity in income between the parties and the heavy income tax burden Tavarez pays as a professional baseball player. The magistrate found that Tavarez not only maintains two houses, but has purchased houses in the Dominican Republic for his siblings. Considering that the parties never married, the magistrate relied on expert testimony presented by Tavarez to show that Siebert received child support payments that are comparable to the average household income in the United States. The magistrate then made these findings:
 {¶ 8} "On 10-14-03 the parties negotiated an agreed upon amount for the current support obligation for the child. The only negotiated change in circumstances in the Agreed Upon Judgment Entry was if the Defendant was no longer on a Major league roster. In the absence of any testimony or evidence that there is a change in the child's needs and circumstances, the Court is left with the analysis of whether the Defendant's increase in salary requires an upward deviation in the agreed on current support obligation. Counsel for the Plaintiff indicated at the close of this case that a deviation of $7500.00 per month retroactive to the filing of this motion would be appropriate under the circumstances. In addition, beginning January 1, 2005 said order should be *Page 6 
increased to $10,000.00 per month. The Court is not persuaded that such an upward deviation would be appropriate in this case. A more reasonable deviation would be a figure more in line with the Plaintiffs average expenses for the year 2004. This deviation would be supported in part by the fact that this mother is a single parent solely responsible for the care of this child twenty four hours a day. Clearly this circumstance will also change in time and may require further court review by the parties."
 {¶ 9} The magistrate ordered that Tavarez pay child support of $3,200 per month effective October 14, 2003.
 {¶ 10} Tavarez filed objections to that part of the magistrate's decision which ordered the modification of child support retroactive to October 14, 2003. The court sustained these objections and modified the magistrate's decision to show that the modification to child support would commence on March 18, 2004, the filing date of the motion to modify child support.
 {¶ 11} Siebert filed her own objections, maintaining that the magistrate erred by considering that the parties had never married for purposes of R.C. 3119.23(L). She argued that marital status was unimportant because the statute was specifically designed to provide a deviation basis which was unrelated to the marital status of the parties. Siebert also asked the court for leave to supplement her objections because she was waiting for a transcript of the hearing to be prepared. She wished to refute the magistrate's findings that *Page 7 
child support be limited to her actual expenses, claiming that her expenses were limited by the child support she received. She stated, "* * * the fact that the Plaintiff was able to live within the means provided to her by prior Court order should not limit the amount of deviation the Court should order in the case."
 {¶ 12} The court overruled Siebert's objections and denied her leave to supplement her objections at a later date. The court then approved and adopted the magistrate's decision.
 I {¶ 13} Siebert first argues that the court erred by denying her motion for leave to supplement her objections. She maintains that former Juv.R. 40(E)(3)(c) required her to support any objection to a finding of fact with the transcript, but that she did not have sufficient time to have a transcript prepared.
 {¶ 14} Former Juv.R. 40(E)(3)(c) stated in part that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available."
 {¶ 15} Juv.R. 40 was amended effective July 1, 2006. The new version is Juv.R. 40(D)(3)(b)(iii):
 {¶ 16} "Objection to magistrate's factual finding; transcript oraffidavit. An objection to a factual finding, whether or not specifically designated as a finding of fact under Juv. R. 40(D) (3) (a) (ii), shall be supported by *Page 8 
a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections." (Emphasis sic.)
 {¶ 17} The Staff Notes to Juv.R. 40 make the following observation:
 {¶ 18} "Sentence two of Juv.R. 40(D)(3)(b)(iii) adds a new requirement, adapted from Loc.R. 99.05, Franklin Cty. Ct. of Common Pleas, that the requisite transcript or affidavit be filed within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause."
 {¶ 19} The court journalized its decision denying Siebert's motion for leave to file supplemental objection on July 7, 2005, six days after the new rule took effect. Therefore, the new version of Juv.R. 40 applied. See Juv.R. 47(R) (the July 1, 2006 amendments "govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that their application in a particular action pending when the *Page 9 
amendments take effect would not be feasible or would work injustice, in which event the former procedure applies.")
 {¶ 20} Juv.R. 40(D)(3)(b)(iii) gave Siebert up to 30 days in which to file a transcript or affidavit. Moreover, it permitted her to seek leave to supplement her objections once she received the transcript.
 {¶ 21} Tavarez argues that the court correctly denied leave to file the transcript because Siebert did not raise any factual issues that required reference to the transcript. He maintains that Siebert simply questioned the court's application of one of the child support guideline deviation factors contained in R.C. 3119.23 — a question concerning a matter of law.
 {¶ 22} We agree with Tavarez that Siebert's objections did not raise factual matters requiring reference to the transcript. Siebert set forth the following objection, in its entirety:
 {¶ 23} "1. The Magistrate's finding that `Defendant's expenditures are not relevant in determining any change in needs of the child or any change in the Defendant's circumstances' fails to address the importance of such expenditures to establish the `standard of living and circumstances of each parent and the standard of living the child would have enjoyed * * * had the parties been married.' See: R.C. 3119.23(L). While the Magistrate noted that the parties in this case were never married, he employs that finding to determine that the above-described statutory provision does not apply. To the contrary, the statute *Page 10 
was specifically designed to provide a deviation basis, which was unrelated to the marital status of the parties at the time the child was conceived and/or whether or not the parties were ever married. Clearly, overlooking this factor and failing to allow the Plaintiff to establish the monthly expenditures used by the Defendant on himself and other family members, was erroneous."
 {¶ 24} This objection did not require the court to review specific factual findings by the magistrate. It asked for the court to give a legal conclusion about the applicability of certain facts. Even at this stage of the proceedings, with possession of a transcript, Siebert is unable to articulate the precise facts that were at issue for purposes of her objection. Instead, she makes the conclusory statement that the court was unable to "meaningfully address" her complaints about the magistrate's decision.
 {¶ 25} Without stating a more specific basis for error based on fact, we conclude that a transcript would not have aided the court's review of the magistrate's decision in any appreciable way. In any event, Siebert could have filed an affidavit in lieu of a transcript under Juv.R. 40(D)(3)(a)(iii), so she had a viable alternative for supplementing her objections without a transcript. Her failure to do so underscores the absence of any factual error as a basis for her assignment of error.
 II *Page 11 {¶ 26} Siebert next argues that the court abused its discretion: (a) by adopting the magistrate's decision because the magistrate failed to properly consider pursuant to R.C. 3119.23(L), the standard of living that the child would have enjoyed had the parents been married and (b) by improperly considering the deviation factors set forth in R.C.3119.23.
 A {¶ 27} We conclude that the court erred by adopting the magistrate's decision because the magistrate analyzed the request for a modification of child support under R.C 3119.22 and R.C. 3119.23 instead of R.C.3119.04(B).
 {¶ 28} R.C. 3119.04(B) states in relevant part:
 {¶ 29} "(B) If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or *Page 12 
agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 30} This section has been construed to mean that the court must "(1) set the child support amount based on the qualitative needs and standard of living of the children and parents; (2) ensure that the amount set is not less than the $150,000-equivalent, unless awarding the $150,000-equivalent would be inappropriate (i.e., would be too much); and (3) if it decides the $150,000-equivalent is inappropriate or unjust (i.e., awards less), then journalize the justification for that decision." Zeitler v. Zeiter, Summit App. No. 04CA008444,2004-Ohio-5551, at ¶ 8.
 {¶ 31} R.C. 3119.04(B) neither contains nor references any factors to guide the court's determination in setting the amount of child support; instead, the court must determine child support on a case-by-case basis. We have expressly stated that R.C. 3119.22, relating to deviations from the child support schedule for listed combined incomes, is no longer applicable in the case-by-case approach. Cyr v. Cyr, Cuyahoga App. No. 84255, 2005-Ohio-504, at ¶ 57. This is because the child support guidelines are expressly inapplicable in cases where the combined income of the parties exceeds $150,000. The court would therefore have no reason to apply R.C. 3119.22 because there would be no guideline amount from which the court could deviate. Hence, in Zeitler v. Zeiter, supra, the court of appeals stated that "* * * under R.C. 3119.04(B) there is no basis for *Page 13 
`deviation,' as the R.C 3119.04(B) method prescribes that child support is to be set based on the qualitative needs and standard of living of the children and parents, not exacting calculations and deviations[.]" The court need only state its reasons for the determined amount if it awards support that is less than the amount listed in the child support guidelines worksheet for combined incomes of $150,000 Cyr, at ¶ 55;Pruitt v. Pruitt, Cuyahoga App. No. 84335, 2005-Ohio-4424, at ¶ 44.
 {¶ 32} Some Ohio courts have employed the "extrapolation" method of calculating child support in cases where the basic child support schedule is inapplicable because the combined income of the parents exceeds $150,000. This method takes the applicable percentage under the child support schedule for couples with combined incomes of $150,000 and applies it directly to whatever income the parents make. For example, inCyr we noted that if the guideline percentage was 14.6%, the court would apply 14.6% of the combined incomes for child support, subject to deviation pursuant to R.C. 3119.22. Id. at ¶ 53. We concluded that R.C.3119.04(B) contains nothing relating to extrapolation and thus "no longer appli[es] to parents whose combined incomes exceed $150,000." Id.
 {¶ 33} Some courts have continued to use the extrapolation method of calculating child support under R.C. 3119.04(B). In Bunkers v.Bunkers, Wood App. No. WD-06-030, 2007-Ohio-561, the Sixth District Court of Appeals stated *Page 14 
that "we cannot say that the trial court abused its discretion when it used the extrapolation method to calculate the proper amount of child support." Id. at ¶ 23. This district has also suggested that "[n]othing in the new version of [R.C. 3119.04(B)], however, prohibits the court from using this method to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method." Cyr v. Cyr, supra, ¶ 56.
 {¶ 34} The Cyr panel noted that there was no specific indication that the trial court had actually applied the extrapolation method in its analysis of the child support order before it, so its discussion relating to extrapolation is dicta. We have significant doubts whether the court fulfills its statutory duty to determine child support on a case-by-case analysis as required by R.C. 3119.04(B) when it by rote extrapolates a percentage of income to determine child support.
 {¶ 35} We concede that the extrapolation method could have limited utility in guiding the court's discretion when the combined income of the parents only marginally exceeds the $150,000 base requirement. However, as the combined income of the parents rises sharply, mere extrapolation can lead to large, and possibly unrealistic, child support amounts. For example, the basic child support schedule set forth in R.C.3119.021, provides a support amount of $15,218 per year for families with combined incomes of $150,000 and one child. Extrapolating this roughly 10 percent figure to an income of $2.6 million would *Page 15 
result in a yearly child support obligation of $260,000 or approximately $21,666 per month. Aside from extraordinary cases or cases dealing with catastrophic expenses, such a child support figure may be viewed as excessive.
 {¶ 36} We do not mean to imply that obligor parents with substantial incomes may not be required to make a very significant financial contribution to supporting their children. When making a child support determination under R.C. 3119.04(B), the court must not only look to the standard of living of the child, but to that of the parents as well. In some cases, this determination will require the court to ensure that the obligor parent is not so overburdened by child support payments that it affects that parent's ability to survive. In other cases, it may require that the court acknowledge the standard of living of the custodial parent, particularly in light of the intangible contributions the custodial parent makes. These contributions may adversely affect the custodial parent's standard of living, and the court should ensure that these intangible contributions are financially offset by the obligor parent. In doing so, the court must be careful to differentiate the need to ensure the custodial parent's standard of living from spousal support. Child support is not spousal support, and we stress that we are not suggesting that the court consider the standard of living that Siebert would have enjoyed had the parties actually been married. However, the facts in this case show that Tavarez has had no part in the child's *Page 16 
rearing and rarely sees the child. The burden of raising the child falls entirely on Siebert, and thus is a valid consideration under R.C.3119.04(B).
 {¶ 37} The line between offsetting contributions by a custodial parent and avoiding ordering de facto spousal support may sometimes not be clearly defined. In such cases, the court's discretion must guide its judgment. In this case, Siebert's request for child support of $7,500 per month for 2004, to be increased to $10,000 per month starting January 1, 2005, may be unjustified. She offered no evidence to support the awarding of such amounts.
 {¶ 38} We conclude, however, that the court's decision to limit the modification of child support solely to the increase in Siebert's actual expenses constituted an abuse of discretion under the circumstances. The decision fails to adequately consider all of the requirements of R.C.3119.04(B). The parties stipulated that Tavarez's income would increase by $1 million per year in 2005, yet this fact appeared to have no bearing on the magistrate's decision. This increase in income constituted a significant change in circumstances which should have affected the amount of child support. By limiting the modification of child support solely to the $200 increase in expenses, the court in effect concluded that Tavarez's increase in income had no effect on the amount of child support. This is an untenable conclusion.
 {¶ 39} We note that the court also relied on evidence from Tavarez's expert who concluded that Siebert received child support payments that were *Page 17 
"comparable to the average household income in the United States and that are comparable to per capita expenditure in the top 6% of households by income in the United States." The court abused its discretion by adopting this portion of the magistrate's decision because this expert testimony fails to correlate Tavarez's income with the current support order. Even though the support order might have enabled Siebert and the child to live at the "average household income" standard, that order does not consider the lifestyle of the child and the parents. Tavarez's income is not an average household income. His child is not entitled to a windfall based on Tavarez's salary, but neither should he be denied a standard of living commensurate with his father's professional success.
 B {¶ 40} Siebert next argues that the court abused its discretion by adopting the magistrate's decision because that decision failed to consider the deviation factors set forth in R.C. 3119.23.
 {¶ 41} As previously noted, a court determining child support obligations pursuant to R.C. 3119.04(B) must proceed on a case-by-case basis and "the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000. Cyr v. Cyr, supra, at ¶ 25. When determining child support under R.C. 3119.04(B), the court is not required to consider the factors set forth in R.C. 3119.23. See, also, Cho v. Cho, Mahoning App. No. 03MA73, 2003-Ohio-7111, at ¶ 13. Deviations pursuant to *Page 18 
R.C. 3119.22 and factors relevant to granting deviations pursuant to R.C. 3119.23 are expressly applicable only to deviations from the basic support schedule and worksheet, not case-by-case determinations under R.C. 3119.04(B).
 {¶ 42} When considering the application of R.C. 3119.04(B), the Tenth Appellate District has found that it is not an abuse of discretion for the court to consider the deviation factors set forth in R.C. 3119.23
when ordering child support in cases where the combined income of the parents exceeds $150,000. In Wolfe v. Wolfe, Franklin App. No. 04AP-409,2005-Ohio-2331, the Tenth District stated at ¶ 11 that, "[w]hile the trial court was not required to consider the factors pursuant to R.C.3119.23, it is not an abuse of discretion to do so in addition to computing the child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B)."
 {¶ 43} Likewise, the Seventh District Court of Appeals in Cho v. Chofound that the trial court did not abuse its discretion when computing child support using R.C. 3119.23 factors since the trial court complied with the requirements of R.C. 3119.04(B). The court in Cho noted that "although the trial court did not specifically state that it was considering the factors in R.C. 3119.23 when making its determination and did not need to, many of the facts it considered correlate with the factors in R.C. 3119.23." Id. at ¶ 15.
 {¶ 44} Unlike the trial courts in Wolfe and Cho, the court in the present case did not make any child support determinations pursuant to R.C. 3119.04(B) *Page 19 
as required. It only considered the R.C. 3119.23 factors and improperly did so pursuant to R.C. 3119.22. Contrary to the courts in Wolfe andCho, we hesitate to wholesale sanction the application of R.C. 3119.23
to child support determinations made pursuant to R.C. 3119.04(B). We give pause because a plain reading of R.C. 3119.23 makes the statute expressly applicable for use in conjunction with R.C. 3119.22.
 {¶ 45} R.C. 3119.23 states in pertinent part: "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code." We interpret this to mean that a trial court's consideration of R.C. 3119.23 factors are permissive and not mandatory. However, consideration of the factors are reserved for determining deviations, pursuant to R.C. 3119.22, from the child support guideline amounts. The guideline amounts are inapplicable in cases of combined income in excess of $150,000, so it follows that there is no amount from which the court can deviate.[2] *Page 20 
However, because R.C. 3119.04(B) gives the trial court broad discretion to determine the appropriate amount of child support, we likewise cannot say that availing oneself of the factors for some guidance is improper. But in no case can the court proceed to determine the proper amount of child support in such cases without fulfilling the analysis mandated by R.C. 3119.04(B).
 IV {¶ 46} In conclusion, we hold that the court abused its discretion by failing to analyze the motion to modify child support under R.C.3119.04(B). On remand, the court must consider the motion to modify child support on a case-by-case basis, taking into account the needs and standard of living of the child and both parents.
 {¶ 47} This cause is reversed and remanded for proceedings consistent with this opinion.
It is, therefore, ordered that said appellant recover of said appellee her costs herein taxed. *Page 21 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., CONCURS
ANN DYKE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION
[1] The magistrate admitted into evidence a copy of Tavarez's contract showing that the St. Louis Cardinals agreed to pay him $1,600,000 in contract year 2004. Despite this number, the parties are bound by their stipulations. See State v. Folk (1991), 74 Ohio App.3d 468, 471.
[2] Even had the deviation factors been applicable, the magistrate erred in its conclusions under R.C. 3119.23(L), which refers to "[t]he standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married." The court adopted the magistrate's conclusion that this factor did not apply to support an increase in child support because the parties were never married and their relationship terminated prior to the birth of the child, so no standard of living had been established. The court erred because it gave no consideration to that part of R.C. 3119.23(L) that states, "or had the parents been married." In order for us to give effect to that language, we must consider it in the context used by the statute. The statute speaks in terms of "the standard of living the child would have enjoyed" in one of two circumstances: had the marriage continued or had the parents been married. We view this language as an obvious recognition that out-of-wedlock children be treated on equal footing with children born in wedlock. The law makes no distinction between the two for purposes of support. See Gomez v. Perez (1973), 409 U.S. 535; Johnson v. Norman
(1981), 66 Ohio St.2d 186, 188. Accepting the court's conclusion, however, would be sanctioning just such a distinction in contravention of clear statutory language. A child has every right to the same standard of living that he or she would have enjoyed if his or her parents were married. We disapprove Jarvis v. Witter, Cuyahoga App. No. 84128, 2004-Ohio-6628, to the extent that opinion could be read to the contrary.