[Cite as *Glatley v. Glatley*, 2018-Ohio-1077.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 104884, 104943, and 105179**

**CHARLENE H. GLATLEY**

PLAINTIFF-APPELLEE/CROSS-APPELLANT

vs.

**MARK C. GLATLEY**

DEFENDANT-APPELLANT/
CROSS-APPELLEE

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-11-339270

**BEFORE:** Laster Mays, J., E.A. Gallagher, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 22, 2018

-i-

**ATTORNEYS FOR APPELLANT**

Scott S. Rosenthal
Brittany A. Graham
Margaret E. Stanard
Schoonover Rosenthal Thurman & Daray L.L.C.
North Point Tower, Suite 1720
1001 Lakeside Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Joseph G. Stafford
Nicole A. Cruz
Stafford    Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114


**ATTORNEY FOR B.G.**

Richard J. Stahl
18051 Jefferson Park Road, Suite 102
Middleburg Heights, Ohio 44130


**GUARDIAN AD LITEM FOR THE CHILDREN**

Edward R. Jansen
Lavelle & Lavelle Co., L.P.A.
815 Superior Avenue, Suite 1825
Cleveland, Ohio 44114


ANITA LASTER MAYS, J.:

{¶1}    Plaintiff-appellee/cross-appellant Charlene H. Glatley ("Charlene") and defendant-appellant/cross-appellee Mark Glatley ("Mark") are parties in three appeals emanating

from post-decree domestic relations litigation determinations.   The parties were married in 1993. Two minor children were born of the marriage.

{¶2}   The trial court judge granted the parties' petition for dissolution of marriage on January 23, 2012, incorporating and approving the November 7, 2011 separation agreement ("SA") and the November 7, 2011 shared parenting plan ("SP Plan") for the children. According to the record, the parties filed at least 28 post-decree motions for SP Plan violations, expenses, and attorney fees. The trial court appointed a Guardian ad Litem ("GAL") and attorney for the children.

{¶3} In November 2014, a new trial judge was assigned to the case.   Eleven of the motions were resolved in an agreed judgment entry on April 5, 2015, addressing most of the outstanding parenting issues. A trial was conducted by the magistrate on several of the remaining motions on May 20, 2015 through May 22, 2015, June 23, 2015, August 3, 2015, and September 2, 2015.   Written closing arguments and recommendations were submitted by the parties on December 22, 2015, and December 23, 2015.   The magistrate issued a decision on March 10, 2016.

{¶4} Preliminary objections to the magistrate's decision were filed by Charlene on March 24, 2016, and by Mark on April 1, 2016.   The parties supplemented their objections on April 22, 2016.    The trial court issued an order for mediation screening on June 9, 2016.   Mediation was unsuccessful.

{¶5} On August 28, 2016, the trial judge adopted the magistrate's decision as modified by the trial court in response to the objections determined to have merit.   Mark appeals and Charlene cross-appeals in the consolidated cases before this court.[1]   Charlene appeals in the companion case.   After a review of the record, we affirm in part, reverse in part, and remand.

---

[1]    Appeal Nos. 104884, 104943, and 105197 have been consolidated for appeal.

{¶6}   In 8th Dist. Cuyahoga No. 104884, Mark challenges the trial court's findings on five of the motions:

May 5, 2014   Mark's motion to show cause and for attorney fees and litigation expenses;

June 2, 2014   Charlene's motion to show cause and for attorney fees and for court order filed;

June 20, 2014  Mark's motion for attorney fees and litigation expenses;

June 26, 2014  Mark's motion for attorney fees; and

April 29, 2015 Charlene's motion to show cause and motion for attorney fees.

{¶7}   In 8th Dist. Cuyahoga No. 104943, Charlene cross-appeals the trial court's rulings on motions filed by the parties, the GAL and the attorney for the eldest son, B.G., including:

May 5, 2014   Charlene's motion to show cause, for attorney fees and litigation expenses;

June 29, 2014  Charlene's motion for attorney fees and litigation expenses;

October 8, 2014      Mark's motion for attorney fees;

March 10, 2015      Attorney for child's motion for payment of assigned counsel and motion to escrow/release funds;

April 6, 2015  Guardian ad litem's motion for fees; and

April 29, 2015 Mark's motion to show cause and motion for attorney fees.

{¶8}   In 8th Dist. Cuyahoga No. 105179, Charlene appeals the trial court's modification of child support to $2,400 per month in response to her motion to modify child support and for attorney fees and litigation expenses.   At a November 15, 2015 hearing, in lieu of live testimony and a full evidentiary hearing, the parties agreed that the issue would be considered based on the trial transcripts of the proceedings held on May 21, 2015, May 22, 2015, June 23, 2015, and August 3, 2015, and all submitted exhibits.   Written final arguments were submitted on

December 22, 2015, and December 23, 2015.  Objections were filed on October 27, 2016, the trial court adopted the magistrate's decision, as modified.[2]

{¶9}   On February 1, 2018, this court issued a sua sponte order consolidating the three cases.

## II. General Standard of Review

{¶10} Domestic relations courts have continuing jurisdiction to entertain post-decree motions.   Our review of the trial court's decisions are subject to an abuse of discretion standard.  *Heary v. Heary*, 8th Dist. Cuyahoga No. 92079, 2009-Ohio-2272, ¶ 9, citing *Dowling v. Schaser*, 8th Dist. Cuyahoga No. 66005, 1995 Ohio App. LEXIS 224  (Jan. 26, 1995).  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## III. Discussion

### A. Introduction

{¶11}   Each of the assigned errors posed by the parties is grounded on the trial court's award, or failure to award, the proper amounts for expenses, fees, contempt sanctions, and costs. Entitlement to the funds in issue turns, for the most part, on the interpretation of the SA and SP Plan incorporated into the judgment of dissolution.

{¶12} A trial court is empowered to interpret the terms of a separation agreement that is governed by the law of contracts.   In doing so, "the trial court must presume that the ordinary meaning of the language used by the parties evinces the intent of the parties."  *Dowling,* 8th

---

[2]   Also, on October 27, 2016, the remaining pending motions were resolved by an agreed entry.

Dist. Cuyahoga No. 66005, 1995 Ohio App. LEXIS 224, at 6 (Jan. 26, 1995), citing *Roller v. Roller*, 8th Dist. Cuyahoga No. 55988, 1989 Ohio App. LEXIS 5075 (Oct. 5, 1989).

{¶13} A shared parenting plan is also subject to the rules of contract interpretation, with a focus on effecting the parties' intent as evidenced by the plain language of the agreement. *Maddox v. Maddox*, 2016-Ohio-2908, 65 N.E.3d 88, ¶ 23 (1st Dist.), citing *Ellsworth v. Ellsworth*, 1st Dist. Hamilton No. C-970916, 1998 Ohio App. LEXIS 6225, 6 (Dec. 24, 1988).

### 1. Mark's Direct Appeal No. 104884

{¶14} Mark advances three assignments of error for this court's consideration:

I.   The trial court erred and abused its discretion in failing to accurately calculate the monies owed to [Charlene].

II.  The trial court erred and abused its discretion in granting [Charlene's] motion to show cause.

III. The trial court erred and abused its discretion in awarding [Charlene] attorney fees in the amount of $34,202.12.

### a. Calculation of Monies Owed

{¶15} The parties agree that Mark is responsible to pay the costs of the children's activities, and 50 percent of the out-of-pocket medical expenses according to the SP Plan. Mark claims entitlement to an offset for medical expenses and disputes the efficacy of the receipts supporting reimbursable expenses. Mark does not dispute the propriety of excluding the $423.86 for Charlene's 2011 RITA income tax form preparation and penalty, and $1,244.16 for the outstanding medical expenses, totaling $1,668.02.

{¶16} Charlene requested total reimbursement in the amount of $22,807.99. The trial court determined:

> The exhibits admitted into evidence show a total of $22,807.99 in unreimbursed expenses claimed by [Charlene]. Of these expenses, $17,758.60 are either

undisputed by [Mark], or are supported by receipts, invoices, or cancelled checks entered into evidence. The remaining expenses are unsupported by any documentary evidence beyond withdrawal slips for cash amounts or carbon copies of checks (but no corresponding cancelled check or bank statement), or have no support at all beyond a line on the spreadsheet prepared by [Charlene]. Additionally, there are charges for payments for a RITA tax preparation and penalty for 2011, which while supported by documentary evidence, show only [Charlene's] name on the bill. There is nothing to establish whether this liability was a joint liability beyond [Charlene's] testimony. Accordingly this amount, $423.86, is excluded from the above calculation. Furthermore, though [Mark] testified that there are $1,244.16 in outstanding medical expenses for the children which [Charlene] owes to [Mark], [Mark's] motion pertaining to this amount was not set before this magistrate, and was instead set to be heard before [the] magistrate along with other pending motions relating to support matters. As such, this amount should not be subtracted from the amount owed to [Charlene] as [Mark] contends. The court therefore finds that [Mark] should be ordered to pay to [Charlene] the sum of $17,758.60.

**{¶17}** The SP Plan provides that the parties "shall discuss in advance and attempt to agree on" matters including "extracurricular activities," "acknowledging that the general well-being of the children is of paramount importance." (SP Plan, p. 1.) "Mark shall be responsible and pay for the minor children's extracurricular activities, summer camp, and lessons." (SP Plan, p. 12.)

**{¶18}** The section on activities and homework further provides:

The parents shall mutually discuss enrollment and any other issues relating to the children's activities. If the parents cannot agree on the enrollment of the children in any activity, then the parent in favor of the activity may still enroll and transport the children to and from any such activity so long as it is consistent with the children's wishes and best interest, and so long as the other parent consents to the children attending the activity during his/her parenting time.

(SP Plan, p. 9.)

**{¶19}** The health and welfare segment of the SP Plan provides:

The parties shall consult with each other and mutually agree upon the medical treatment, education and religious training of the children, their activities, illnesses and operations (except in emergencies) and all other matters of similar

importance with the objective that the proper well-being, education and development of the children shall at all times be paramount.

(SP Plan, p. 11.)

**{¶20}** The separation agreement allocates full responsibility to Mark for real property maintenance expenses, mortgages, property taxes, insurance, and "all repairs and maintenance, excluding landscaping and snow removal, relative to said real property, and he shall indemnify and hold Charlene absolutely harmless relative thereto." (SA, p. 2.)

**{¶21}** Mark testified that he and Charlene previously agreed that Mark owed approximately $11,360 plus $1,244 for medical expenses. A number of the expenses were substantiated by ATM withdrawal slips or bank statements without documentation from the actual vendor or recipient of the funds. Some of the ATM receipts contained handwritten notations by Charlene describing what a portion of the withdrawn funds were allegedly used for.

**{¶22}** According to Mark, the expenses documented by ATM receipts or statements listed in the spreadsheet exhibit proffered by Charlene (exhibit No. 11) are:

| | | | |
|---|---|---|---|
| 06/20/2012 | A American Appliance | $ | 49.00 |
| 07/16/2012 | Basketball Blue Streak Camp | $ | 265.00 |
| 04/30/2013 | Basketball | $ | 65.00 |
| 06/26/2013 | National Education Music trumpet rental | $ | 191.02 |
| 08/26/2013 | Outdoor faucets | $ | 190.00 |
| 09/03/2013 | Gutter cleaning | $ | 75.00 |
| 11/07/2013 | Malka bat mitzvah gift weekend | $ | 50.00 |
| 02/27/2014 | supplies for shower | $ | 238.08 |
| 02/28/2014 | Refrigerator repairs Fred's Appliance | $ | 123.09 |
| 04/12/2014 | CVS meds | $ | 65.53 |
| 04/21/2014 | eye appointment | $ | 10.00 |

*Total*      $1,321.72

**{¶23}** The record also reflects that no evidence was provided to support four alleged expenses:

| | | | | |
|---|---|---|---|---|
| 2012 | Electrical switches | $ | 75.00 | |
| 04/12/2012 | Laundry stair repair | | $ | 80.00 |
| 2013 | saxophone lessons | $ | 150.00 | |
| 020/3/2014 | ski club | | $ | 225.00 |
| | | *Total* | $ | 530.00 |

Mark also argues that $500.00 for roof repairs made on April 12, 2012, and $1,350 for summer camp in 2014 has already been paid and should be deducted from the trial court's award. Charlene responds that "all of the supporting documentation had been provided to Mark's counsel" and that Charlene "mailed it to Mark via certified mail."

**{¶24}** Generally, the "credibility of the evidence is within the factfinders discretion." *Thomas v. Thomas,* 8th Dist. Cuyahoga No. 78294, 2001 Ohio App. LEXIS 2326 at 7 (May 24, 2001)*,* citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St. 3d 77, 80, 461 N.E.2d 1273 (1984). Mark does not deny responsibility for the debt categories but argues that there was no credible evidence supporting the validity of the debts. We agree.

**{¶25}** "A receipt may be defined to be such a written acknowledgment, by one person, of his having received money from another, as will be prima facie evidence of that fact in a court of law." *Kegg v. State*, 10 Ohio 75, 79, 1840 Ohio LEXIS 82 (1840). We do not find that evidence of cash withdrawals via ATM receipts or records of withdrawals on bank statements alone serve as competent, credible evidence sufficient to demonstrate that a debt was satisfied or, in fact, that a debt was even incurred. *See, e.g., Flynn v. Sender*, 8th Dist. Cuyahoga No. 84406, 2004-Ohio-6283, ¶ 22 (dealing with the validity of deductions of ordinary expenses in calculating income for child support purposes and holding that blind acceptance of all expenses claimed by a party is not required).

**{¶26}** Mark also disputes the trial court's approval of the $4,070 charge for a four-week summer camp for one child. *See* journal entry No. 95360789 (Aug. 18, 2016), p. 4. Mark and Charlene disagreed on whether the child's attendance was in the child's best interests. Mark opposed participation because the child was taking new behavioral medication, and Mark believed that four weeks was too long since the child had never been away home for that period of time. Charlene testified that Mark did not want the child to go to camp at all.

**{¶27}** While the plain language of the SP Plan provides that Mark will pay for camp and extracurricular activities, the SP Plan also sets forth certain conditions regarding participation. If the parents are not in agreement, "the parent in favor of the activity may still enroll and transport the children to and from any such activity" if participation is "consistent with the children's wishes and best interest" and if the opposing parent agrees to attendance at the activity during the opposing parent's parenting time. (SP Plan, p. 9.) Mark testified, "nor had I even had the opportunity to discuss the camp. I thought going somewhere closer for two weeks in case [there were] difficulties [with the new medication] would be a better solution and [I] agreed to pay" "for two weeks" August 3, 2015. (Tr. 10.)

**{¶28}** In this case, the parties did not agree that the four-week activity was in the child's best interest. The SP Plan provides that, subject to some flexibility, Mark's parenting time is on the first and third weekends beginning at 5:00 p.m. on Friday until 5:00 pm. on Sunday. Four weeks would include Mark's parenting entitlement, in spite of his disagreement. Mark did testify that he would agree to two weeks. Therefore, we find that Mark is responsible for one-half of the total camp or $2,035.00.

**{¶29}** The first assignment of error is sustained. The case is remanded to the trial court to recalculate Mark's obligation for expenses to include the payments already remitted, and

to exclude expenses that have been insufficiently documented as described herein, and the reduction in Mark's obligation for the camp.

### b.     Charlene's Motion to Show Cause

**{¶30}**     The trial court granted Charlene's motion that Mark be held in contempt for failure to reimburse expenses ordered by the divorce decree as addressed in the first assignment of error.   "The burden of proof for civil contempt is clear and convincing evidence."   *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 19, citing   *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio- 5972, ¶ 9.    We review a trial court's contempt finding for an abuse of discretion.   *Id*. at   ¶ 21, citing *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 96910, 2012-Ohio-808, ¶ 22, citing *In re Contempt of Modic*, 8th Dist. Cuyahoga No. 96598, 2011-Ohio-5396, ¶ 7.

**{¶31}**   While we determined in our analysis of the first assigned error that Mark is entitled to a recalculation of expenses, we affirm the trial court's finding of contempt. We agree with the trial court that Mark has offered no valid reason for failure to pay the expenses that were not in dispute.    The second assignment of error is overruled.

### c.     Award of Attorney Fees

**{¶32}**     Charlene requested attorney fees and expenses totaling $68,404.24 and Mark requested $1,000.    The magistrate, who declined to hold Mark in contempt on the issue of expense reimbursement, also rejected Charlene's claim for attorney fees and expenses.    The magistrate determined that the $68,404.24 expended by Charlene plus the $38,796.37 expended by Mark to resolve a dispute regarding $22,000 of reimbursements and issues regarding visitation was excessive.

**{¶33}** Based on the trial court's finding that Mark was in contempt for failure to reimburse expenses, and that Charlene was in contempt for denying parenting time, the trial court determined that both parties were entitled to attorney fees. Mark was granted $1,000 in fees and expenses, as he requested.

**{¶34}** The trial court cited consideration of the factors of R.C. 3105.73(B) in reaching a decision on Charlene's request:

> (B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

**{¶35}** The trial court, after observing that Mark's 2014 income was approximately twenty times greater than that of Charlene, determined:

> [Charlene's] attorney fees which are attributable at least partly to the prosecution of her motion to show cause total over 70 hours, which is nearly half of her attorney fees billed in this matter. Many of these fees were billed for items which apply both to the prosecution of her contempt motion and to the parenting motions before the court. In considering the vast difference between the parties' incomes, however, along with this court's finding that [Mark] should be held in contempt for his failure to reimburse [Charlene] for expenses clearly owed under the parties' divorce decree, the court finds it equitable to award [Charlene] half of her attorney fees, in the amount of $34,202.12. This amount encompasses both fees incurred in the prosecution of her motion to show cause as well as fees incurred in the litigation of the parties' parenting motions over the court of the last three years.

*See* journal entry No. 95360789 (Aug. 18, 2016), p. 6.

**{¶36}** In spite of the disparity in income, "the trial court was well within its discretion to determine that" Charlene was not entitled to an award of the full amount of attorney fees requested. *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 103695, 2017-Ohio-11, ¶ 21.

**{¶37}** The third assigned error lacks merit.

### 2. Charlene's Cross-Appeal No. 104998

**{¶38}** Charlene asserts the following errors in her cross-appeal:

I. The trial court erred and abused its discretion in failing to award Charlene the full amount of expenses due and owing under the terms of the judgment entry of dissolution.

II. The trial court erred and abused its discretion in failing to award Charlene the full amount of her attorney fees and litigation expenses in the amount of $68,404.24.

III. The trial court erred and abused its discretion in failing to order Mark to pay 100 percent of the fees incurred by the GAL and the attorney for the children.

**{¶39}** Charlene's first and second assigned errors are moot based on our decision on Mark's first, second, and third assigned errors. App.R. 12(A). We address Charlene's remaining assigned error challenging the fees for the GAL and attorney for children.

**{¶40}** We have previously recognized the propriety of allocating GAL fees "based on which party caused the work of the guardian ad litem." *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 77, citing *Jarvis v. Witter*, 8th Dist. Cuyahoga No. 84128, 2004-Ohio-6628, ¶100, *overruled on other grounds*, *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643. A trial court is given considerable discretion in these matters. *Strauss* at ¶ 77.

**{¶41}** The trial court thoroughly detailed the rationale of the award for the fees, allocating 40 percent to Charlene and 60 percent to Mark.

> The Magistrate considered the parties relative earnings, assets, and expenses in dividing the Guardian ad Litem fees, as well the attorney for the child fees, and divided them between the [parties] accordingly, with [Charlene] paying 40% of the Guardian ad Litem and attorney for child fees, and [Mark] paying 60%. While [Mark] does have significantly higher income than [Charlene], [Charlene's] income and support are sufficient to allow her to pay 40% of these fees as ordered

by the Magistrate, especially when considering the amount of household expenses paid for by [Mark] pursuant to the parties' divorce decree. Furthermore, though the parenting motions were ultimately resolved in [Charlene's] favor, both parties contributed to the length of the litigation and the necessity for a Guardian ad Litem and an attorney for the child in this matter. Accordingly, the court finds * * * that the Magistrate's division of the GAL and attorney for the child fees should be upheld.

The court further finds that the Guardian ad Litem['s] motion for fees, should be granted and that he should be awarded his fees in the amount of $10,275.00. [Charlene] should be responsible for 40% of these fees in the amount of $4,110.00. [Mark] should be responsible for 60% of these fees in the amount of $6,165.00, and should receive a credit toward this amount of $500 for the deposit already paid, for a total due to the Guardian ad Litem in the amount of $5,665.00.

The court further finds that the attorney for the child's motion for fees and motion to release funds should be granted and that he should be awarded his fees in the amount of $12,659.50. [Charlene] should [be] responsible for 40% of these fees in the amount of $5,063.80. [Mark] should [be] responsible for 60% of these fees in the amount of $7,595.70, and should receive a credit toward this amount of $1,618.75 for the bond paid by him, for a total due to the attorney for the child in the amount of $5,976.95.

Journal entry No. 95360789 (Aug. 18, 2016), p. 7.

**{¶42}** We do not find that the trial court's determination is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The third assigned error lacks merit and is overruled.

### 3. Charlene's Appeal No. 105179

**{¶43}** The single assigned error in the consolidated case challenges the propriety of the $2,400 child support award as being in the best interest of the minor children. We affirm the trial court's finding.

**{¶44}** We will not reverse a trial court's decision on child support on appeal absent an abuse of discretion. *Katz v. Katz*, 8th Dist. Cuyahoga No. 103715, 2017-Ohio-4290, ¶ 14, citing *Gray v. Gray,* 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 7.

**{¶45}** On November 12, 2015, the magistrate issued a decision on five of the post-trial motions, including a motion to modify child support. The magistrate's decision also considered the May 3, 2016 magistrate's decision as well as the listed objections, replies, supplemental objections and replies, preliminary objections and replies, exhibits, November 12, 2015 hearing audio transcript, and transcripts of prior proceedings. The trial court issued its decision on October 27, 2016, adopting the magistrate's decision as modified.

**{¶46}** The trial court explained in exhaustive detail the grounds for the child support determination to increase monthly child support from $1,200, based on $600 per child, to $2,400 per month, and attached a child support worksheet to the judgment entry. Both parties objected to the support amount with Mark claiming that no increase was required and Charlene alleging that the increase was insufficient and that if the child support calculation worksheet was applicable in this case, it would demonstrate entitlement to approximately $7700 per month.

**{¶47}** The trial court recognized that Mark had received a substantial increase in income since the 2012 dissolution and child support award. The trial court included additional income reported in Mark's taxes, but denied multiple amounts suggested by Charlene including the income of the current spouse, barred by R.C. 3119.05(E), and a prospective inheritance, barred by R.C. 3119.01(C)(7)(e) as speculative, nonrecurring, and/or unsustainable income. Inclusion of contributions to 401(K) retirement plans is within the court's discretion. *Citta-Pietrolungo v. Pietrolungo*, 8th Dist. Cuyahoga No. 85536, 2005-Ohio-4814; R.C. 3119.01. The trial court decided to exclude it as a relatively negligible amount in light of the amount of Mark's other contributions. The trial court reached a 2014 income amount calculated pursuant to a child support worksheet, comprised of Mark's base salary from employment,

additional income as reported on tax filings but not previously included, and an average of three years of bonuses from employment.

{¶48} Charlene's income was based on her 2014 tax return showing a business loss, spousal support, and income imputed at minimum wage. Mark's income is approximately eight times that of the calculation for Charlene. Income beyond $150,00 pursuant to R.C. 3119.04(B) was also extrapolated according to the child support guidelines, providing a range, where health insurance coverage  provided from $1,619.61 per month to $5,249.25. *Snyder v. Snyder*, 8th Dist. Cuyahoga No. 95421, 2011-Ohio-1372, ¶ 45.

{¶49} The magistrate recommended $2,400 which is $900 above the $150,000 guideline baseline and $2,800 below the extrapolated amount for 2014. Contrary to Charlene's objections, the magistrate considered that the children should have a comparable lifestyle in both parent's homes while allowing Mark to maintain his lifestyle.

{¶50} Consideration was also given to the payments by Mark that are incorporated in the decree of dissolution, covering the costs of the marital residence and children's activities, payments that average an additional $50,000 per year. The trial court explicitly rejected Charlene's categorization of the payments as division of property, "as they impact the standard of living and qualitative needs of the children." Journal entry No. 96264857 (Oct. 27, 2017), p. 6.

{¶51} As we have recently held:

Under R.C. 3119.04(B), "domestic relations courts have more discretion in computing child support when the parents' combined income is greater than $150,000." *Macfarlane* [*v. Macfarlane*], 8th Dist. Cuyahoga No. 93012, 2009-Ohio-6647, ¶ 17. This statute "neither contains nor references any factors to guide the court's determination in setting the amount of child support; instead, the court must determine child support on a case-by-case basis." *Siebert* [*v. Tavarez*,] 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 31. Indeed, this court has stated that R.C. 3119.04(B) "leaves the determination entirely to the court's discretion, unless the court awards less than the amount of child support

listed for combined incomes of $150,000." *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 54, citing R.C. 3119.04(B)

*Abbey v. Peavy*, 8th Dist. Cuyahoga No. 100893, 2014-Ohio-3921, ¶ 25.

**{¶52}** The trial court took note of the magistrate's finding of a lack of credibility in Charlene's testimony regarding the source and funds of her accounts, including deposits characterized as loans that appeared to be gifts. Notwithstanding this observation, the trial court advised that the concern did not impact the support amount.

**{¶53}** We find that the trial court's analysis is well supported in fact and law, and that the trial court did not abuse its discretion. The assignment of error is without merit.

## IV. Conclusion

**{¶54}** The trial court's finding in Appeal No. 105179 is affirmed.

**{¶55}** The trial court's decision in Appeal Nos. 104884 and 104943 allocating the GAL fees and attorney fees for the child is affirmed, as well as the finding of contempt, and is reversed as to the expense reimbursement award, and remanded for recalculation of Mark's reimbursement amount.

It is ordered that the parties bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the domestic relations division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, A.J., and
MELODY J. STEWART, J., CONCUR