JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Eddy H. Wright ("Eddy"), appeals from the judgment of the Cuyahoga County Common Pleas Court concerning motions to modify child support and a motion for attorney's fees. For the reasons stated herein, we affirm.
 {¶ 2} Appellee, Kathleen C. Wright ("Katie"), is Eddy's ex-wife. The parties were divorced on June 24, 2003. Pursuant to the terms of the divorce decree, Eddy was ordered to pay child support for the parties' two minor children in the amount of $1,530 per month for 42 months commencing July 1, 2003 until December 31, 2006. Thereafter, he was to pay $2,550 per month in child support. He was also ordered to pay spousal support in the amount of $5,610 per month for the same 42-month period. The divorce decree further provided that "neither party expects to file a motion to modify child support within the next 42 months, so long as father's annual income remains between $200,000 and $300,000." The worksheets attached thereto indicated that Eddy had a projected income of $200,000 for 2003.
 {¶ 3} Relevant to this matter, Eddy filed a motion to modify child support on April 3, 2006, and Katie filed a motion to modify child support on November 28, 2006, as well as a motion for attorney's fees. The matter proceeded to a hearing before a court magistrate on May 23, 2007.
 {¶ 4} The testimony and evidence in this matter reflect the following facts. At the time of their divorce, Eddy was employed at Electrodata, Inc., and he owned a 10 percent interest in the company. In 2007, Eddy purchased his two business partners' ownership shares in the company. The deal was structured so that Eddy *Page 4 
did not have to spend any up-front cash and by the company buying back all of the outstanding stock owned by the business partners over a period of time, thereby leaving Eddy as the sole stockholder.
 {¶ 5} Eddy's former business partners became salaried employees of the company. Eddy's base salary was $92,080 from 2003 through 2005, and $95,280 in 2006. He received a bonus of $675,000 in 2003 (despite his projected income of only $200,000), $140,000 in 2004, $25,000 in 2005, and $3,200 in 2006.[1] Although Eddy historically received compensation similar to that of his former business partners, Eddy's former business partners were each paid substantial bonuses in 2006, with their total compensation being slightly in excess of $229,000 each.
 {¶ 6} Eddy maintained that business was down in 2006 and that 2006 and 2007 were the worst years for the company. His expert testified to the downturn in revenues. Eddy claimed that the existing cash was the company operating expense. He also indicated that the company had continuing obligations to his former business partners as part of the redemption agreement and their continued employment.
 {¶ 7} Katie presented expert testimony from Ken Sustin, a CPA, who opined that after taking into consideration all of the required payments of the company, including the redemption agreement as to the buy-out of the former business partners, the cash flow of the company was sufficient to pay Eddy more despite a *Page 5 
downward trend in 2006. Mr. Sustin further calculated that there was $172,612 of excess cash flow left in the company for Eddy to pay himself more money.
 {¶ 8} Katie began employment as a produce manager with Bird Technology Corporation in 2002. Prior to that she was not generating income. She earned $66,872 in 2006, and she was being paid at a rate of $72,000 per year in 2007. She also incurred day-care expenses, which the trial court calculated to be in the amount of $8,180.49 for 2006. Katie's spousal support terminated as of January 1, 2007.
 {¶ 9} The magistrate found that Eddy was not voluntarily underemployed and that there was little expectation that Eddy's income would become more in line with his historic pay because he was unlikely to receive bonus pay in the near future. Therefore, the magistrate concluded that income averaging was not an appropriate method to determine future income and determined that Eddy's annual gross income from employment should be $92,080. The magistrate also determined Eddy had additional income from interest in the amount of $5,362. Katie's annual gross income was determined to be derived from her salary of $72,000.
 {¶ 10} The magistrate determined that child support should be lowered to $1,452.74 per month and found that Katie was entitled to an award of attorney's fees in the amount of $14,246.10. Both parties filed objections to the magistrate's decision.
 {¶ 11} The trial court sustained both parties' objections in part and adopted the magistrate's decision as modified by the court. The court determined that evidence had been presented that Electrodata had sufficient cash to pay Eddy a bonus in *Page 6 
2006, but that he chose not to receive one. Upon recognizing that Eddy had the sole discretion in determining the amount of income he received in any given year and that his claimed income for 2006 "may not be an accurate reflection of the gross income which is available to [Eddy]," the court calculated Eddy's income by averaging his income over three-year periods. The court also considered the needs and standard of living of the children, who since the divorce had gone on several international vacations with Eddy, participated in a variety of extracurricular activities, incurred expenses for orthodontia, and had ongoing college savings. The court also noted that Eddy had purchased a new home since the divorce. The court determined that the needs and standard of living of the children had not been reduced since the time of the divorce.
 {¶ 12} The trial court concluded that Eddy was to pay child support in the amount of $1,776.85 per month from April 3, 2006 (the date of his motion) until December 31, 2006, and $2,550 per month thereafter. The trial court also lowered the amount of attorney's fees awarded to Katie to $7,500.
 {¶ 13} Eddy filed this appeal, raising six assignments of error. We initially recognize the appropriate standard of review. Generally, a trial court's decision in matters involving child support is reviewed under an abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144. The term "abuse of discretion" implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Nevertheless, a trial court's discretion is not unfettered and the mandatory statutory child-support requirements must be *Page 7 
followed in all material respects. Sapinsley v. Sapinsley,171 Ohio App.3d 74, 77-78, 2007-Ohio-1320, citing Marker v. Grimm (1992),65 Ohio St.3d 139, paragraph two of the syllabus. The failure to do so constitutes reversible error. See Marker, supra at 143. With the above standard in mind, we proceed to address the assigned errors.
 {¶ 14} Eddy's first and second assignments of error provide as follow:
 "I. The trial court erred by failing to comply with the statute and consider the impact of the child support award upon appellant/obligor and abused its discretion by failing to place its findings in this regard on the record.
 "II. The trial court erred and abused its discretion by failing to consider the burdensomeness of the continued $2,500 child support obligation on appellant's ability to survive."
 {¶ 15} Eddy argues that the trial court failed to adhere to the mandatory requirements of R.C. 3119.04. He claims that a trial court is required to set forth its reasoning for ordering an amount of child support above the guidelines in cases where the parties' combined gross income is $150,000 or more. Eddy further argues that a trial court is required to show that it considered certain facts, including the ability of the obligor to pay the child support award and the burdensomeness on the obligor's ability to survive.
 {¶ 16} R.C. 3119.04(B) provides guidance as to the examination of child support where the combined income of the parties exceeds $150,000. The statute states as follows:
 "If the combined gross income of both parents is greater than one *Page 8 hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings."
R.C. 3119.04(B).
 {¶ 17} This court has repeatedly held that the statute gives a trial court discretion in determining the child support amounts on a case-by-case basis and does not require any explanation or findings as to the trial court's determination unless the court awards less than the amount awarded for combined incomes of $150,000. Keating v.Keating, Cuyahoga App. No. 90611, 2008-Ohio-5345; Cyr v. Cyr, Cuyahoga App. No. 84255, 2005-Ohio-504; Pruitt v. Pruitt, Cuyahoga App. *Page 9 
No. 84335, 2005-Ohio-4424. We are unpersuaded by Eddy's reliance onSiebert v. Tavarez, Cuyahoga App. No. 88310, 2007-Ohio-2643, in which we recognized the same statutory construction, but found the trial court had failed to utilize R.C. 3119.04 in rendering its child support determination.
 {¶ 18} In this case, the trial court complied with the statute in making its child support determination insofar as the court examined the parties' finances, determined their combined income exceeded $150,000, and assessed the needs and standard of living of the children. Eddy's first and second assignments of error are overruled.
 {¶ 19} Eddy's third assignment of error provides as follows:
 "III. The trial court erred and abused its discretion by relying upon an incorrectly calculated amount for appellant's annual gross income when arriving at a child support figure."
 {¶ 20} Child support must be calculated in accordance with the provisions of R.C. 3119.02 to 3119.24, including the basic child support schedule and the applicable worksheet. R.C. 3119.02. The overriding concern of the legislation is to ensure the best interest of the child for whom support is being awarded. Marker, 65 Ohio St.3d at 141.
 {¶ 21} Eddy argues that the trial court incorrectly calculated his income by including an overstatement of the amount of his bonus income. R.C. 3119.01(C)(7) defines gross income as the "total of all earned and unearned *Page 10 
income from all sources during a calendar year * * * and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code * * * ." R.C. 3119.05(D) in turn requires that when calculating gross income from bonuses, the trial court "shall include the lesser of * * * (1) The yearly average of all * * * bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; [and] (2) The total * * * bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."[2]
 {¶ 22} Notwithstanding the foregoing provisions, R.C. 3119.05(H) affords a trial court the discretion to calculate gross income "when appropriate" by averaging income "over a reasonable period of years." This section expressly allows a trial court to use the average income "over a reasonable period" when determining the income of a party or parties. The only guideline provided is that this provision is to be applied in "appropriate" cases. See Cook v. Cook (Feb. 9, 1996), Lake App. No. 95-L-115.
 {¶ 23} Eddy claims that the trial court erred by not applying the formula set forth for calculating income from bonuses set forth in R.C. 3119.05(D). A similar argument was recently addressed in Allen v.Allen, Greene App. No. 2004 *Page 11 
CA 32, 2005-Ohio-431, wherein the court stated as follows: "R.C. 3119.05
does not require strict compliance with the formula set forth therein for the treatment of commissions [and bonuses], as Mr. Allen suggests. R.C. 3119.05(H) provides that, `when the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years.' Thus, the court had some leeway, and the trial court * * * had the option of averaging or not."
 {¶ 24} Other courts have similarly recognized that R.C. 3119.05(H) provides a trial court with the discretion to average income over a reasonable period of years when calculating gross income. E.g.,Ostmann v. Ostmann, 168 Ohio App.3d 59, 73, 2006-Ohio-3617; Sullivan v.O'Connor, 167 Ohio App. 3d 458, 465; Scott G.F. v. Nancy W.S., Huron App. No. H-04-015, 2005-Ohio-2750; Cook, supra. The income averaging method permitted by this section has been found to offer a useful method for calculating gross income when an obligor's income is unpredictable or inconsistent. In re Kohlhorst, Auglaize App. No. 2-06-09,2006-Ohio-6481; Marquard v. Marquard (Aug. 9, 2001), 10th Dist. No. 00AP-1345. In deciding whether it is appropriate to use the income averaging method set forth in R.C. 3119.05(H), the trial court is in the best position to weigh the facts and circumstances of the case. SeeSullivan, supra.
 {¶ 25} In this case, evidence was presented that Eddy's bonuses varied from 2003 through 2006, from a high bonus of $675,000 in 2003 to a low (or no) bonus *Page 12 
in 2006. Evidence was presented that Eddy had historically received compensation from the company comparable to his former business partners. However, in 2006, his bonus was substantially less. Eddy presented evidence that since 2003, his bonus pay has steadily decreased. He argued that the large bonus he received in 2003 should be viewed as non-recurring income. He also testified that business had declined and that he did not expect future bonus payments. On the other hand, plaintiff's expert testified that the company had $172,612 in excess cash flow from which Eddy, as the sole shareholder, could have paid himself a greater income.
 {¶ 26} Upon the evidence presented, the trial court determined that Eddy's 2006 income may not have been an accurate reflection of the gross income that was available to him and that Eddy had the sole discretion in determining his earnings. We recognize that under certain circumstances, retained earnings of a corporation may be imputed as income for purposes of determining child support. See Ulliman v.Ulliman, Montgomery App. No. 22560, 2008-Ohio-3876; Sullivan,167 Ohio App.3d 458; Kotoch v. Kotoch (July 9, 1998), Cuyahoga App. No. 72919.
 {¶ 27} After considering the facts and circumstances of the instant case, the trial court exercised its discretion and found it appropriate to calculate Eddy's income using the income averaging method permitted by R.C. 3119.05(H). Our review of the record reflects that the trial court could "appropriately" utilize the *Page 13 
income averaging method under R.C. 3119.05(H) to determine Eddy's gross income. We further find that there was competent, credible evidence in the record supporting the trial court's determination. We find no abuse of discretion occurred in the trial court's calculation. Eddy's third assignment of error is overruled.
 {¶ 28} Eddy's fourth assignment of error provides as follows:
 "IV. The trial court erred and abused its discretion in granting appellee's request to modify the child support obligation when such termination is based solely on appellee's spousal support."
 {¶ 29} Eddy argues that the trial court's continuation of his $2,550 per month child support obligation was based solely and exclusively upon the termination of Katie's spousal support. We are not persuaded by his argument.
 {¶ 30} We recognize that there is a distinction between child support and spousal support and that a court must be careful to differentiate the two. However, this does not mean that the termination of spousal support is never relevant to a determination of child support based upon the needs and standard of living of the children. Indeed, "case law requires in computing the child support obligation, the trial court must deduct spousal support from the income of the obligor and include it as income on the obligee's side of the worksheet." Collins v. Collins, Licking App. No. 2008-CA-00028, 2008-Ohio-4993; see, also, R.C. 3119.022. *Page 14 
 {¶ 31} In this case, the trial court properly recognized that the termination of spousal support affected the parties' income. The record also reflects that the trial court considered the needs of the children and their standard of living in making its determination. Furthermore, the parties themselves agreed that child support would be increased to $2,550 per month when the spousal support ceased. There is nothing in the record to suggest that the trial court's award amounted to de facto spousal support.
 {¶ 32} After performing the child support calculation, the trial court found that the calculated amount was within 10 percent of the original calculation; therefore, the court found that a change of circumstances had not occurred that would necessitate a modification of child support. As a result, the trial court reset the child support for the time period commencing January 1, 2007, to the amount originally agreed to by the parties. We find no abuse of discretion occurred as to the treatment of spousal support. Eddy's fourth assignment of error is overruled.
 {¶ 33} Eddy's fifth assignment of error provides as follows:
 "V. The trial court erred and abused its discretion by ignoring the prior agreements of the parties, which were incorporated into and made final orders of the court."
 {¶ 34} Eddy argues that the trial court erred in its treatment of bonus income because the parties had agreed, and the trial court had previously ordered, that bonuses would be calculated using the "lesser of" formula under R.C. 3119.05(D). This matter was before the court on motions to modify child *Page 15 
support. Insofar as we have already determined that the trial court complied with the statutory requirements for determining gross income, we find no error occurred. Eddy's fifth assignment of error is overruled.
 {¶ 35} Eddy's sixth assignment of error provides as follows:
 "VI. The trial court erred and abused its discretion by awarding attorney's fees to appellee."
 {¶ 36} Pursuant to R.C. 3105.73(B), in any post-decree motion or proceeding arising out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." The statute further provides that "[i]n determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B). An award of attorney's fees under this section is reviewed under an abuse of discretion standard. Keating, supra.
 {¶ 37} In this case, evidence of the parties' incomes and their ability to pay was contained in the record. The magistrate awarded Katie $14,246.10 in attorney's fees after "consideration of the disparity in the parties' respective income and other available resources." Eddy objected to this award, and the trial court determined that the amount should be reduced to $7,500. The trial court indicated that it considered the factors set forth in R.C. 3105.73(B), recognized there was an income disparity between the parties, but found that the disparity was not so great that Katie *Page 16 
could not contribute any amount toward her attorney's fees. We find the trial court's award of attorney's fees was equitable and do not find any abuse of discretion occurred. Eddy's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] Eddy states in his brief that he received no bonus for 2006; however, Eddy's testimony was that he received a bonus of $3,200 in 2006.
[2] The statute also includes overtime and commissions in the calculation; however, no such income is involved in this case. *Page 1