[Cite as *In re R.M.H.*, 2025-Ohio-2452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE R.M.H. | : | |
| | : | No. 114402 |
| A Minor Child | : | |
| | : | |
| [Appeal by T.T., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 10, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. FA21710130

*Appearances:*

Stafford Law Co., L.P.A., and Kelley R. Tauring, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Plaintiff-appellant T.T. ("mother") appeals the August 28, 2024 judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), which established the child-support obligations of defendant-appellee R.H. ("father"). Upon review of the limited record presented by mother, as well as pertinent law, we affirm the juvenile court's judgment.

## I. Facts and Procedural History

{¶ 2} Mother and father's child, R.M.H., was born on September 4, 2021. At the time, father was a professional athlete on the roster of a Cleveland sports franchise. Mother and father were never married and never lived together either before or after R.M.H.'s birth. Indeed, at the time mother became pregnant, and at least up to the time of the support hearing, father was married. He and his wife had two children, with a third on the way at the time of the support hearing.

{¶ 3} On November 9, 2021, mother filed a complaint in juvenile court for paternity and to establish child support. Father answered on November 24, 2021, and further sought genetic testing by motion filed December 3, 2021, indicating that mother had refused testing to establish father's paternity. Mother moved to strike father's motion on December 28, 2021, characterizing it as a personal attack and noting that mother's complaint requested an order for DNA testing. By order dated March 29, 2022, the court struck the motion as redundant given the request for genetic testing in the complaint, but specifically ordered all parties, including R.M.H. (joined by the court, sua sponte, as a plaintiff), to submit to genetic testing. Mother filed the results of DNA testing, which calculated the probability of paternity as exceeding 99.9 percent.

{¶ 4} On June 27, 2022, the juvenile court docketed an order memorializing an attorney conference held that day. The juvenile court noted that the parties were in agreement with respect to genetic-testing results and ordered them to submit an

agreed entry on paternity.[1]  It further noted that "discovery pertaining to child support has not been exchanged" and required the parties to engage in discovery. The juvenile court also granted father leave to file a counterclaim related to parenting time and visitation.

{¶ 5} Mother promptly began paper discovery.  On June 28, 2022, she filed a notice with the juvenile court that she had served her first set of interrogatories and first request for production of documents on father's counsel.

{¶ 6} Father counterclaimed on July 15, 2022, to establish paternity and parental rights and responsibilities, including custody and visitation.  On January 17, 2023, however, he informed the court that the counterclaim would be withdrawn.[2]  The case thereafter proceeded solely on the issue of father's support obligations.

{¶ 7} The parties engaged in some motion practice related to discovery.  For example, on August 17, 2022, mother filed a motion for extension of time in which to submit her responses to father's first set of discovery requests.  On November 3, 2022, father filed a motion captioned "Defendant's Motion to Compel Better Responses to Discovery and to Overrule Objections."  Mother opposed the motion on November 23, 2022.

---

[1] The parties filed an agreed entry regarding paternity on October 20, 2022.

[2] In a pretrial entry filed July 20, 2023, the juvenile court noted that father was, at that time, "not actively pursuing" the counterclaim.  In a journal entry filed May 7, 2024, the juvenile court noted again that father was not pursuing the counterclaim.

{¶ 8} On December 6, 2022, the court held an attorney conference to address discovery issues. It ordered father to provide his 2021 tax return and recent paystubs within 14 days. To address lingering discovery disputes addressed in the motion to compel, the juvenile court noted the parties' disagreement regarding statutory language concerning the needs and standard of living of the child and parents and ordered the parties to brief the issue. On January 17, 2023, more than a year before trial, mother filed a brief captioned "Mother's Brief Regarding Discovery Responses." Father filed a brief the same day captioned "Father's Brief on Child Support and Discovery in High Income Earner Cases." Mother filed a reply brief on February 3, 2023.

{¶ 9} The case was assigned to a visiting judge by order dated February 23, 2023. A pretrial was held July 20, 2023, and the assigned judge issued an extensive pretrial order the same day. The juvenile court noted that the case "appears to fall under" R.C. 3119.04 (the support provision governing high-income cases). The visiting judge ordered the parties to engage in further paper discovery, as well as identify fact witnesses, agree upon deposition dates, and execute releases relating to financial and medical information, such as medical expenses for R.M.H.

{¶ 10} The July 20, 2023 order also provided a list of 12 categories of items to be provided at the support hearing for the purpose of child-support calculations. This included, but was not limited to, personal and corporate tax returns and attachments; W-2s; paystubs; proof of health insurance premiums; information on

other dependents; and proof of annual wages and earnings for the last three calendar years.

{¶ 11} On August 21, 2023, father filed a notice of compliance with the juvenile court's July 20, 2023 order. Father identified only himself and mother as fact witnesses and indicated he did not intend to call expert witnesses. Father also identified multiple financial documents, such as his 2021 tax return, W-2s and 1099s for 2022, and paystubs for 2022. The notice indicated that father was "currently unemployed."

{¶ 12} The juvenile court held another pretrial on December 7, 2023. It ordered that "Income Taxes and attachments and schedules" (presumably referring to returns) and other tax information "be exchanged within 30 days." It scheduled the support hearing for March 25, 2024. The hearing date was later rescheduled on the court's own motion for May 8, 2024.

{¶ 13} On May 6, 2024, father moved to continue the support hearing and to compel the production of documents by mother. In his motion, father alleged that mother had failed to comply with the juvenile court's July 20, 2023 order to produce financial information. Father contended that "[o]n September 2, 2023," mother filed a motion for extension of time to produce the required information, but "[t]o date, nothing has been filed by the Mother in compliance with this Court's Trial

Order/Judgment Entry."[3]  The juvenile court denied the motion as untimely and out of rule on May 7, 2024.

{¶ 14} The record does not reflect that mother ever filed a similar motion to compel or otherwise complained that the financial information produced by father was incomplete.

{¶ 15} On May 7, 2024, mother filed both an exhibit list and a witness list. The exhibit list merely referenced "[f]inancial records and documentation of the parties," as well as all documents exchanged in discovery.

{¶ 16} The support hearing went forward as scheduled on May 8, 2024.  The juvenile court docketed an order on May 10, 2024, briefly summarizing the proceedings.  The juvenile court characterized the proceedings as an "Evidentiary Hearing on Motions for Child Support and Awards for Past Child Care," and specifically noted that "[a]ll other motions are dismissed for failure to prosecute." Only mother and father testified.  "All other [sic] exhibits were stipulated by [sic]." Mother's exhibits included father's 2021 and 2022 federal income tax returns, as well as her own returns from 2022 and 2023 and her 2021 W-2.  Father's exhibits consisted of his 2023 1099s and W-2s, as well as a direct child support ledger.

---

[3] On August 3, 2023, mother filed a motion seeking a temporary and permanent child support order.  We are, however, unable to locate the September 2, 2023 motion for extension of time referenced in father's motion.  We have not limited our search to that date; apart from mother's August 3, 2023 motion, which was not addressed to the timing of disclosures, we are unable to locate any motions filed by mother between the time of the juvenile court's July 20, 2023 order and the May 8, 2024 support hearing.

Mother and father "stipulated Mother has one other child. Father has two other children with a third child due in 2 1/2 weeks." The court further ordered:

> The parties shall prepare and submit to the Court and the other a closing argument prepared as a Finding of Fact and Conclusion of Law with child support worksheets by none [sic] on May 24, 2024.

{¶ 17} In a pleading filed June 3, 2024, father averred that he had timely submitted his proposed findings of fact and conclusions of law on May 24, 2024. Father's June 3 pleading was captioned as a memorandum in opposition to mother's motion for extension of time. Father contended that mother filed a motion for extension of time "at 7:43 PM on the [May 24, 2024] due date, citing involvement in another case as the reason for their delay." Father complained not only of the delay, but that mother "now has the advantage of reviewing the [father's] proposed findings of fact and conclusions of law before submitting their own."

{¶ 18} As with mother's September 2, 2023 motion, we once again are confronted with a pleading purportedly filed by mother but not included in the appellate record. There is no appearance docket entry reflecting that mother filed a motion for extension of time to submit proposed findings of fact and conclusions of law, and we have not located the motion in the physical file. We see no need to order supplementation of the record, however, because the juvenile court granted mother's motion for extension of time by order dated June 14, 2024. The juvenile court indicated it would "allow the Plaintiff extension of time to file a brief and proposed findings of fact within 7 days from the filing of this Order." It appears to

be undisputed, however, that mother never filed proposed findings of fact and conclusions of law or the required child-support worksheets.

{¶ 19} On July 8, 2024, prior to issuing any decision, the juvenile court journalized an entry requiring the substitution of an exhibit concerning father's income. The court wrote:

> [U]pon reviewing the exhibits before writing a decision the Court discovered Mother's stipulated Exhibit 1, [R.H.] 2021 Tax Year Federal Taxes was not complete. Apparently 2022 Depreciation form 4562 and the Schedule E was placed into the exhibit by mistake at Trial.
>
> Therefore, the Court orders the parties to file with the Court a new and complete stipulated Exhibit 1 ([R.H.] 2021 Tax Year Federal Return). Counsel must stipulate as to the 2021 Federal Tax Return and Schedules and submit the same to the Court in 14 days from the filing of this Order.

{¶ 20} The docket does not reflect the filing of a substitute exhibit. The exhibits provided with the record on appeal, however, include the required submission, proffered under a cover letter signed by father's counsel. Father's counsel indicated in the cover letter that his firm had reached out to mother's counsel to secure a stipulation but had not received a response.

{¶ 21} On August 28, 2024, the juvenile court docketed a 21-page opinion, inclusive of cover page and Ohio child-support-guideline worksheets. Because mother did not file a transcript of proceedings in connection with this appeal, the juvenile court's opinion and the parties' financial exhibits provide the exclusive portal for assessing what occurred at the support hearing.

{¶ 22} After addressing preliminary issues, the juvenile court noted that while father had filed proposed findings of fact and conclusions of law and proposed

child-support worksheets, mother failed to do so despite being granted an extension:

> At the conclusion of the evidentiary hearing, the Court gave the parties an opportunity to give closing arguments in the form of written findings of fact and conclusions of law with proposed child support worksheets. . . . Father filed that pleading on May 24, 2024. Over Father's objection, the Court granted Mother an extension until June 21, 2024 to file her closing. Mother never filed the same.

{¶ 23} The juvenile court then made extensive factual findings. It found that father had been a professional athlete, that his "income was substantial but fluctuated depending on his contracts and incentives," and that he had last played professional sports on January 7, 2023. It found that while father "has not been employed" after that date, he continued to receive income from other streams, including endorsements and "real estate investments." The juvenile court noted that father paid a mortgage on his own home and his mother's home, and further noted father's testimony that his wife manages his real estate rentals and other financial affairs. It stated that father's wife was not called as a witness by either party, nor was any deposition testimony introduced.

{¶ 24} The juvenile court characterized father's testimony regarding his financial affairs unfavorably: "Father gave vague answers about his rental business, other assets, and income and debts by simply stating his wife keeps all the records and is essentially his property manager."

{¶ 25} The juvenile court indicated that mother's income had been difficult to ascertain due to her pregnancy with another child during the time period in question. Furthermore, the juvenile court wrote that it "had hoped Mother's counsel

would have submitted a child support worksheet and argument corroborating Mother's theory of the case but that did not occur."

{¶ 26} The juvenile court cataloged all exhibits. It noted the stipulation that mother had one child other than R.M.H. and that father had two children other than R.M.H., with a third due to be born shortly after trial. It found that father had "no contact or minimal contact" with R.M.H.

{¶ 27} The juvenile court further found that father had not been employed for two years and that, while he was capable of employment, he was "having a difficult time transitioning between working and being a professional athlete." It recounted evidence regarding his income, expected income, and expenses. It noted that his investment properties were held by H. Property Holdings, LLC. The court found that the rentals grossed $182,993 in 2021 and $312,264 in 2022 (based upon Exhibits 1 and 2, father's tax returns for tax years 2021 and 2022), but that no information was provided by either party as to gross rental income for 2023.[4]

{¶ 28} The juvenile court prepared a table summarizing father's income from 2021 through 2023, indicating father's tax return for 2021 reflected an adjusted gross income ("AGI") of $1,927,137, his 2022 return reflected an AGI of $646,435, and W-2 and 1099 exhibits for 2023 reflected an income of $165,117.75.[5]

---

[4] The order indicates that "[n]o information was given by either party as to the LLC's gross rental income," but that sentence immediately followed the court's recitation of dollar figures the "rentals grossed" in 2021 and 2022. In this context, we interpret this as reference to 2023, especially given that 2023 was the last complete calendar year.

[5] The juvenile court listed father's 2021 AGI as $1,927,137 at one point in its opinion and as $1,927,127 at another. $1,927,137 is the correct figure based on father's federal tax

{¶ 29} The juvenile court noted that while father had received over $164,000 in the form of salary from the sports franchise and from a Nike endorsement, he testified those "will not recur in future years."

{¶ 30} The juvenile court calculated mother's present earnings as $41,407.20 per year. It again noted that she had been pregnant, with limited income, in late 2021 into 2022. It took notice of her affidavit of income and expenses.

{¶ 31} Due to father's voluntary unemployment, the juvenile court imputed father's present income (i.e., his 2024 income) as $57,845, based upon minimum wage, "unearned benefits he receives from his rental LLC" every month for his motor vehicle, and depreciation benefits from his rental LLC. The juvenile court found mother's income to be $5,842 for 2021, $9,731 for 2022, $23,446 for 2023, and $41,407.20 for 2024.

{¶ 32} The juvenile court specifically noted that due to father's substantial income from the date of R.M.H.'s birth through the end of 2022 — i.e., combined earnings in excess of $336,467.04 — it calculated support for those years pursuant to R.C. 3119.04 and 3119.23. For 2023 and 2024, by contrast, the juvenile court indicated it calculated child support pursuant to R.C. 3119.021. It also gave father credit for child-support payments voluntarily made directly to mother.

{¶ 33} In ultimately calculating child support, the juvenile court noted the "length of litigation" and "the great variance of income year-to-year." For 2021 and

---

return, and the juvenile court used the precise, unrounded figure of $1,927,136.88 on the relevant child-support-guideline worksheet.

2022, the juvenile court quoted R.C. 3119.04 in full and further found an upward deviation appropriate pursuant to R.C. 3119.23(E), (K), and (L), due to factors such as the standard of living R.M.H. would have enjoyed had the parents been married. It ordered child support from September 4, 2021, to December 31, 2021, in the amount of $3,000 per month plus administrative fees, and from January 21, 2022, to December 31, 2022, in the amount of $2,500 per month plus administrative fees. As noted, this was an upward deviation from the worksheets attached to the opinion, which would have fixed child support at $2,178.70 per month for 2021 and $2,153.79 per month for 2022. The juvenile court found that for these high-income years, the bottom-line worksheet numbers for 2021 and 2022 were "unjust and inappropriate and not in [R.M.H.'s] best interest."

{¶ 34} As previously discussed, the juvenile court had noted earlier in its opinion that it would calculate 2023 and 2024 support pursuant to R.C. 3119.021. The juvenile court therefore relied on basic-worksheet calculations for 2023 and 2024. It fixed the 2023 amount at $1,304.20 per month plus administrative fees, and the 2024 amount at $612.06 per month plus administrative fees. The juvenile court noted that its findings were "based upon testimony, exhibits, and Chapter 3119 of the Ohio Revised Code." Prior to again setting out the precise support payments by year, the court explained the hurdles posed by incomplete submissions and the accompanying delay in issuing its opinion:

> The Court was handicapped by a lack of testimony or documentation verifying the parties' positions. Father had not filed his 2023 Federal taxes or offered rental income/expenses documentation for tax year

2023.  Mother did not call [R.H.'s wife] who had access to Father's financial information, inclusive of Father's lifestyle.  The parties stipulated to tax returns without pointing out the value of relevant evidence contained therein, causing the court to weed through all of the exhibits, including tax forms.  Mother did not file a closing argument or child support worksheet, even though she was granted an extension of time to file the same.  All of these factors, plus the Court's schedule delayed this Judgment Entry.

{¶ 35} Mother's timely appeal followed.  Mother raises a single assignment of error:

The trial court erred as a matter of law and abused its discretion in its calculation of child support under Ohio Revised Code Section 3119, et. seq.

{¶ 36} While mother filed a brief on appeal, father did not.  Finding no merit to the appeal, we affirm the decision of the juvenile court.

## II. Analysis

### A. The Record on Appeal

{¶ 37} Before turning to the standard of review and our analysis of the juvenile court's judgment, we note that the record on appeal in this case does not include a transcript of the May 8, 2024 hearing or an App.R. 9(C) statement of the evidence or proceedings.  It is an appellant's duty to arrange for transmission of the record, including the transcript of proceedings.  App.R. 9(B); *In re D.B.*, 2025-Ohio-1371, ¶ 13 (8th Dist.); *V.C. v. O.C.*, 2021-Ohio-1491, ¶ 64 (8th Dist.) ("*V.C. I*") ("It is the appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decision.").  "'This is necessarily so because an appellant bears the burden of showing error by reference to matters in the

record.'" *Id.*, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162 (1978).

{¶ 38} If a transcript is unavailable, an appellant may offer a prepared "statement of the evidence or proceedings from the best available means, including the appellant's recollection." App.R. 9(C)(1). *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). An appellant's failure to file a transcript or a statement of evidence as required under App.R. 9 results in the court having to presume the regularity of trial-court proceedings. *V.C. I* at ¶ 65; *see also Mayfield Hts. v. Durr*, 2016-Ohio5249, ¶ 4 (8th Dist.); *Pietrangelo v. Hudson*, 2019-Ohio-1988, ¶ 22 (8th Dist.); *Capriolo v. Am. Constr. Group, LLC*, 2022-Ohio-4508, ¶ 26 (8th Dist.); *Bakhtiar v. Saghafi*, 2016-Ohio-8052, ¶ 3 (8th Dist.) ("In the absence of a complete and adequate record, a reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision.").

{¶ 39} In this case, similar to *Bakhtiar*, we noted the absence of a transcript and issued a sua sponte order on December 13, 2024, indicating that "the record in this appeal has been converted into an App.R. 9(A) record for failure to file an App.R. 9(B) transcript[.]" *See also Bakhtiar* at ¶ 2 ("appeal shall proceed on the App.R. 9(A) trial court record without any additional transcripts"). For purposes of the assignment of error in this appeal, therefore, the record consists of the underlying pleadings, the juvenile court's orders, the August 28, 2024 judgment

entry establishing father's child-support obligations, and the financial exhibits admitted into evidence at the May 8, 2024 hearing.

{¶ 40} Without a transcript, however, we are unable to address any factual disputes arising through testimony or the arguments of counsel at the hearing. We are mindful that "'pursuant to R.C. 3119.05(A)[,] a trial court is restrained to review documents, not testimony, to establish income.'" *In re M.C.M.*, 2018-Ohio-1307, ¶ 32 (8th Dist.), quoting *Ellis v. Ellis*, 2009-Ohio-4964, ¶ 60 (7th Dist.). We nevertheless have no indication of whether mother raised arguments regarding the completeness of father's proffered financial documents, how father responded to such arguments, or how the juvenile court addressed any such issues during the hearing. Absent "a transcript (or statement of the evidence or proceedings), we have no basis upon which to review" mother's assignment of error "to the extent [it] concern[s] factual disputes." *V.C. I*, 2021-Ohio-1491, at ¶ 66 (8th Dist.), citing *Fennell v. DeMichiei*, 2019-Ohio-252, ¶ 11 (8th Dist.). "Instead, we must accept the trial court's factual findings as true and limit our review to the trial court's legal conclusions, i.e., the trial court's application of the law to the facts." *V.C. I* at ¶ 66.

## B. Standard of Review

{¶ 41} We review a juvenile court's determination of child-support obligations for abuse of discretion. *V.C. v. O.C.*, 2022-Ohio-1506, ¶ 10 (8th Dist.) ("*V.C. II*"). *See also In re J.C.*, 2022-Ohio-3326, ¶ 82 (8th Dist.). A trial court "abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority." *Hunter v. Troutman*,

2025-Ohio-366, ¶ 64 (8th Dist.), citing *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Hunter* at ¶ 64, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). "The trial court has considerable discretion in child support matters; absent an abuse of discretion, we will not disturb a child support order." *J.E.M. v. D.N.M.*, 2021-Ohio-67, ¶ 22 (8th Dist.), citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997).

### C. Support Calculations

{¶ 42} The juvenile court calculated father's monthly child-support obligation pursuant to Chapter 3119 of the Ohio Revised Code. R.C. 3119.02 provides:

> In any action in which a court child support order is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid pursuant to a child support order, or when a child support enforcement agency determines the amount of child support that will be ordered to be paid pursuant to an administrative child support order, issues a new administrative child support order, or issues a modified administrative child support order, the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119. of the Revised Code. The court or agency shall specify the support obligation as a monthly amount due and shall order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children. In performing its duties under this section, the court or agency is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding.

{¶ 43} Based upon the statutory framework, the juvenile court applied different standards for what it classified as high-income years (2021 and 2022)

versus years with comparatively modest incomes (2023 and 2024). We address its determinations separately.

### 1. Child-Support Calculations for 2021 and 2022

{¶ 44} "When the combined annual income of both parents is greater than the maximum annual income listed on the basic child support schedule, . . . the standard child support guidelines set forth in R.C. 3119.02 are not applicable. Instead, R.C. 3119.04 applies." *V.C. I*, 2021-Ohio-1491, ¶ 78 (8th Dist.). R.C. 3119.04 provides in relevant part:

> If the combined annual income of both parents is greater than the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, the court, with respect to a court child support order, . . . shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined annual income equal to the maximum annual income listed on the basic child support schedule established pursuant to section 3119.021 of the Revised Code, unless the court or agency determines that it would be unjust or inappropriate and therefore not in the best interest of the child, obligor, or obligee to order that amount. If the court makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶ 45} At the time of the hearing in this action, the basic child-support schedule established pursuant to R.C. 3119.021 specified a maximum annual income of $336,467.04. In the present case, for both 2021 and 2022, "there is no dispute that the parents' combined annual income exceed[ed] $336,467.04 — the maximum annual income currently listed on the basic child support schedule established

pursuant to R.C. 3119.021." *V.C. II*, 2022-Ohio-1506, at ¶ 7 (8th Dist.).[6] This court has explained that in such cases,

> [u]nless the trial court issues an order imposing a child support obligation that is *less* than the obligation that would have been computed under the basic child support schedule and worksheet for a combined annual income of $366,467.04, the statute leaves the determination of the amount of child support to be awarded "'entirely to the court's discretion.'"

(Emphasis added.) *Id.* at ¶ 8, quoting *E.O.W. v. L.M.W.*, 2021-Ohio-2040, ¶ 10 (8th Dist.), quoting *Cyr v. Cyr*, 2005-Ohio-504, ¶ 54 (8th Dist.). To clarify:

> In other words, where the parents' combined annual income exceeds $366,467.04, the child support obligation computed under the basic child support schedule and worksheet for a combined annual income of $366,467.04 is generally "the floor" — but not "the ceiling" — for an obligor's child support obligation. *V.C. I*, 2021-Ohio-1491, at ¶ 79. Where the parents' combined annual income exceeds $366,467.04, a trial court may issue an order imposing a child support obligation that is *less* than the obligation that would have been computed under the basic child support schedule and worksheet for a combined annual income of $366,467.04 only if (1) the trial court determines that it would be unjust or inappropriate and, therefore, not in the best interest of the child or either parent to order that amount and (2) includes such findings in its journal entry.

(Emphasis added.) *V.C. II* at ¶ 8, fn. 1; *see also Wright v. Wright*, 2009-Ohio-128, ¶ 16-18 (8th Dist.) (in high-income cases, the statute "does not require any explanation or findings as to the trial court's determination unless the court" goes below the floor).

{¶ 46} In this context, therefore, "the only statutory requirement is that the trial court consider 'the needs and the standard of living of the children . . . and of

---

[6] References in *V.C. II* to $366,467.04 rather than $336,467.04 appear to be a typographical error.

the parents' in determining the amount of the obligor's child support obligation."

*V.C. II* at ¶ 8, quoting R.C. 3119.04. Both "needs" and "standard of living" have been

explained as follows:

> With the exception of extraordinary individual medical or developmental issues, as previously noted, the "needs" of a child are necessaries like food, clothing, shelter, medical care, and education. Needs are not income based — they apply in similar fashion for all children, regardless of the income level of the parents. That a parent has a large income has no effect on a child's basic needs: a child needs to eat, but a child does not need to eat caviar.
>
> Consideration of the "standard of living" the child would have enjoyed is based on the premise that parents may freely decide to dissolve their relationship, but children have no choice in the matter. If the child enjoyed a high standard of living during the marriage, the child is entitled to enjoy that standard after the marriage has been dissolved. *Boone v. Holmes*, 10th Dist. Franklin No. 14AP-449, 2015-Ohio-2242, ¶ 16. The court must be careful, however, to consider only how the child *would* have lived had the parents remained together, not how the child *could* have lived. When considering the standard of living of the parents, the court must ensure that the obligor parent is not so overburdened by support obligations that it affects that parent's ability to survive. *Id.* at ¶ 36. The court must also consider intangible contributions by the noncustodial parent to the effect those contributions may adversely affect that parent's standard of living. *Id.*

(Emphasis in original.) *Phelps v. Saffian*, 2016-Ohio-5514, ¶ 18-19 (8th Dist.).

{¶ 47} It is irrelevant that a child born out of wedlock to a high-income father

never lived with him and, therefore, never previously enjoyed a high standard of

living. Like the present case, *Boone* involved a professional athlete who fathered a

child out of wedlock. The Tenth District upheld an order in which the juvenile court

wrote that "the child 'should share in Defendant Father's professional success with

a standard of living that reflects same, and therefore, the concept of need is not just

that of basic needs, but those commensurate with the lifestyle of a parent often dependent upon wealth, culture and values.'" *Boone* at ¶ 18.

{¶ 48} Similarly, *Siebert v. Tavarez*, 2007-Ohio-2643 (8th Dist.), involved a Cleveland Indians baseball player. This court wrote that "[h]is child is not entitled to a windfall based on Tavarez's salary, but neither should he be denied a standard of living commensurate with his father's professional success." *Id.* at ¶ 39. This court further explained that the child support "statute speaks in terms of 'the standard of living the child would have enjoyed' in one of two circumstances: had the marriage continued or had the parents been married." *Id.* at ¶ 45, fn. 2, citing R.C. 3119.23(L) (now recodified as R.C. 3119.23(K)). The court viewed this as "an obvious recognition that out-of-wedlock children be treated on equal footing with children born in wedlock. The law makes no distinction between the two for purposes of support." *Id.* A child, it concluded, "has every right to the same standard of living that he or she would have enjoyed if his or her parents were married." *Id. See also In re J.M.G.*, 2013-Ohio-2693, ¶ 32 (8th Dist.).

{¶ 49} Here, with respect to year 2021 and 2022, the juvenile court explicitly cited R.C. 3119.04 in making its determination as to father's support obligation, as well as the deviation factors codified at R.C. 3119.23, specifically subsections (E), (K), and (L). After referencing the statutes and quoting R.C. 3119.04 in full, it found that based upon, inter alia, "the standard of living [R.M.H.] would have enjoyed had the parents been married," an upward deviation was appropriate for both 2021 and 2022. In other words, it broke through the ceiling, imposing a child-support

obligation greater than under the basic child-support schedule and worksheet for a combined annual income of $336,467.04. Under the authority above, therefore, such a determination is left """entirely to the court's discretion.""" *V.C. II*, 2022-Ohio-1506, at ¶ 8 (8th Dist.), quoting *E.O.W.*, 2021-Ohio-2040, at ¶ 10 (8th Dist.), quoting *Cyr*, 2005-Ohio-504, at ¶ 54 (8th Dist.).

{¶ 50} In *V.C. I*, a high-income case in which the trial court neither cited nor applied R.C. 3119.04, this court found the trial court "applied the wrong legal standard" and therefore "abused its discretion." *V.C. I*, 2021-Ohio-1491, at ¶ 82 (8th Dist.). Here, by contrast, the juvenile court applied the correct legal standard with respect to 2021 and 2022. Even if we were free to review the juvenile court's ultimate support rulings in this circumstance, mother passed on the opportunity to submit proposed findings of fact and conclusions of law, along with proposed worksheets. As a result, there are no competing calculations or upward-adjustment figures for this court to review. Mother argues in her brief that father "enjoyed a lifestyle of the ultrawealthy" and "a luxurious standard of living." (Mother's brief at p. 8-9.) The juvenile court, however, found that mother failed to elicit testimony relative to father's lifestyle, noting that mother had (for example) failed to call father's wife to testify as to their standard of living. This occurred well after the parties had extensively briefed their respective interpretations of "the needs and standard of living of the child and parents" in early 2023, more than a year before the support hearing. Again, we have no transcript to review to determine what questions either side posed to father at the hearing regarding his standard of living, or how he

responded.  We find no abuse of discretion as to the juvenile court's support order for 2021 and 2022.

### 2. Child-Support Calculations for 2023 and 2024

{¶ 51} We likewise find no abuse of discretion with respect to the juvenile court's calculations of father's child-support obligations for 2023 and 2024.  As discussed above, father had stopped playing football, and his income — as established through exhibits and as discussed by the juvenile court — had dropped precipitously.  The juvenile court made findings with respect to father's 2023 income and imputed income for 2024, and thereafter calculated father's 2023 and 2024 child-support obligations pursuant to R.C. 3119.021, the basic child-support schedule.

{¶ 52} One of mother's principal arguments is that the juvenile court did not sufficiently explore father's rental income for 2023 or thereafter.  Mother writes that father "testified that his rental income had decreased in 2023, but he provided no records or documentation to demonstrate what he had collected in rental income and/or the expenses associated with his rental properties." (Mother's brief at p. 3.) We are unable to address this argument, however, for reasons already discussed: mother failed to file a transcript or any statement of the evidence or proceedings. We have no way to review father's testimony under direct examination or cross-examination.  Furthermore, with respect to father's obligations under R.C. 3119.05(A), we have nothing to tell us what arguments were made to the court with respect to father's purported lapse in providing financial information, or how

father and the court responded on the record. Also, as we have already noted, the juvenile court provided mother with an opportunity to present proposed findings of fact and conclusions of law, as well as proposed calculations, and even granted an extension of time in which to file them. Mother filed nothing.

{¶ 53} Mother would instead have us lay the blame for any lack of financial data at the juvenile court's feet. In arguing that the juvenile court failed to consider father's business income and deductions, mother cites *Bowen v. Thomas*, 102 Ohio App.3d 196 (3d Dist. 1995), for the proposition that "[i]t is the duty of the trial court to use the full power of the court to obtain complete information concerning the income and financial affairs" of the parties. (Mother's brief at p. 10.) *Bowen*, however, is distinguishable. In *Bowen*, a motion to compel had been filed against the recalcitrant party. The core holding in *Bowen* on this point of law is the following:

> [W]e hold that, when a party has taken every legally permissible action to ensure that the court has before it the records and documentation required to make a determination of child support, and the other party refuses to comply with orders and discovery requests, it is the duty of the trial court to ensure that the reluctant party complies with the law. . . . Orders of the court to produce documents are not to be ignored by an obstinate party, and the court is required to utilize its authority to find such party in contempt of court.

*Bowen* at 202. In the present action, nothing in the record suggests that mother took action at any juncture to alert the juvenile court that father's submissions were deficient. Months before the hearing, on August 21, 2023, father had filed a notice of compliance with the juvenile court's pretrial order regarding financial and other disclosures. He identified multiple financial documents and indicated he was

currently unemployed. Mother engaged in no motion practice with respect to father's submissions. Shortly before trial, on May 6, 2024, father himself filed a motion to compel indicating that mother's financial submissions were incomplete. By contrast, nothing in the record indicates that mother alerted the juvenile court at that time (or any other time) to deficiencies in father's records. Moreover, due to the lack of a transcript, we are unaware of any arguments that might have been made at the hearing and unable to assess whether such arguments could have made a difference in the outcome of the proceedings.

{¶ 54} While we acknowledge that R.C. 3119.05(A) requires all parties to provide the court with financial information for purposes of a child-support hearing, at least one appellate court has explicitly held that "[t]he plain language of the statute does not place a duty on the trial court to verify income." *Ellis*, 2009-Ohio-4964, at ¶ 53 (7th Dist.). In *Ellis*, the father had argued "that by amending the language of the statute to read 'shall be verified' as opposed to 'the parents shall verify,' the legislature intended to impose a duty on the trial court, instead of the parents, to verify the parents' gross incomes." *Id.* at ¶ 52. The *Ellis* Court rejected that argument, noting that this would be equivalent to requiring "the trial court to act as a quasi-advocate and procure the parties' income documentation." *Id.* It concluded that "none of the cases [father] cites support his contention that R.C. 3119.05(A) places a duty on the trial court to verify the parents' incomes." *Id.* at ¶ 55.

{¶ 55} *Ellis* was an unusual case; the father had argued that the trial court erred by not independently verifying *his own income*, not his adversary's income. *Id.* at ¶ 56. The Seventh District, however, had an opportunity to revisit the issue under more typical facts in *Garrett-Long v. Garrett*, 2016-Ohio-7041 (7th Dist.). There, as here, one party complained that "the *other* party did not verify their testimony on a lack of an asset[.]" (Emphasis added.) *Id.* at ¶ 83. In *Garrett-Long*, "the father believe[d] the mother was required to submit a document to show the lack of a trust res." *Id.* Father, however, evidently did not object at trial, and the court found that he made no specific objections in his challenge to the magistrate's decision. *Id.* at ¶ 83-84. The court ultimately held:

> [W]ithout a specific objection to the lack of documentary evidence on the depleted trust and the legal effect of this failure, the mother had no opportunity to argue against the father's legal assertion or to petition the court to entertain additional evidence.

*Id.* at ¶ 85.

{¶ 56} The present action does not involve a hearing before a magistrate or subsequent objections. The result is no different, however, because nothing in the record tells us whether mother objected at the hearing to the lack of documentation with respect to father's business venture. Nothing in the record indicates she pointed out the possible legal effects of his failure to provide certain financial documents. Nothing in the record indicates that father had an opportunity to respond to any such arguments and, if so, what response he offered. All of this uncertainty flows from the lack of a transcript.

{¶ 57} In addition, on July 8, 2024, after the support hearing but before issuing its decision, the juvenile court ordered father to substitute an exhibit, specifically his 2021 federal tax return. Nothing in the record suggests that, at this juncture, mother took the opportunity to alert the court to concerns regarding the completeness of father's financial data. Finally, while mother argues that father's "true rental income should be found to be at least $312,345 per year" (mother's brief at p. 12), we reiterate that she failed to submit proposed findings of fact and conclusions of law, as well as proposed child-support worksheets, for the juvenile court's consideration.

{¶ 58} In light of this, we find that the juvenile court did not abuse its discretion in calculating the parents' respective incomes for 2023 and 2024 or in preparing the corresponding child-support worksheets for the purpose of computing father's support obligations for those years.

{¶ 59} The juvenile court's judgment with respect to father's child-support obligations is affirmed in its entirety.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

EMANUELLE D. GROVES, P.J., and
ANITA LASTER MAYS, J., CONCUR